**AFF**
EDWARD S. COLEMAN, ESQ.
Nevada Bar No. 000601
COLEMAN LAW ASSOCIATES,
A Professional Law Corporation
6615 S. Eastern Avenue, Suite 108
Las Vegas, Nevada 89119
*Attorneys for DEBTORS*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. 10-21796-BAM |
|---|---|
| FRANK LEVESQUE | Chapter 11 |
| and | **AFFIDAVIT OF BONNIE LEVESQUE** |
| BONNIE LEVESQUE <br> Debtors | |

STATE OF NEVADA  )
                 ): ss.
COUNTY OF CLARK  )

**I, Bonnie Levesque, being first duly sworn, deposes and says:**

1. I, Bonnie Levesque, am over the age of eighteen and have personal knowledge of the facts set forth in this affidavit.

2. I am the Debtor in the above named case No. 10-21796-BAM.

3. I have personal knowledge of, and am competent to testify to, the facts herein.

4. The following facts outline the conversation(s) with my previous attorney's office, Christopher Legal Group, for the filing and processing of the Chapter 7 Bankruptcy, in regard to the automobile accident of September 15, 2009.

5. My husband, Frank and I told our legal team on more than 2 separate occasions of Frank's accident and medical condition before meeting with the trustee Brian Shapiro to finalize our Bankruptcy. Both Shawn Christopher's and Lauren Simichich's reactions to our information led both Frank and I to believe that we were answering appropriately to questions being asked when we met with Brian Shapiro. I do not agree that we filed in bad faith or deliberately tried to deceive anyone with our responses.

6. The first time that Frank and I talked about the accident was when we met Shawn Christopher during our initial consultation. We had fallen behind in our mortgage payments after Frank was laid off from his job in April and it became worse after the accident and Frank was not able to work due to his problems with his back. I tried to modify our loan with Suntrust Mortgage so that we could keep our house and not go into foreclosure. I have copies of the paperwork sent in to Suntrust telling them about the accident and Frank's injury. Frank and I talked with Christopher Legal to make sure that if we did need to file, we would know what to do. We met attorney Sean Christopher in his office after I got off of work, so I know it was after 5:00 p.m. the afternoon of January 4, 2010. We explained to him what had happened and at time brought up the accident and of Frank's lay off and also told him that we were underwater on the house a substantial amount. His response was to advise us to file for bankruptcy and let the house go. At that time he did not ask us any further about the accident even after we had said that the accident was not Frank's fault and that he was seeing a chiropractor for his back.

7. In June 2010, after it was evident that we would lose the home and we received a notice to vacate our house, Frank and I again went to Christopher Legal with our payment and the packet with all of our debts listed. We sat with Lauren Simichich on June 24, 2010, after the

2

papers were ready to be filed and reviewed all that she had done. At that time, we told her about the accident and asked her if we needed to note it anywhere. Her response was that "we were not going to worry about that right now". So we proceeded in signing all the paperwork and filing with the court.

8. On August 20, 2010, the day that we were to meet with the trustee, they were about an hour and a half behind, so we were there for a few hours at 300 Las Vegas Blvd, Room 1500. Shawn Christopher took Frank and I outside of the actual room that the trustees were in and met with us just outside the door. He told us that they were going to ask us a series of questions and they were all ok until he got to the one where we would be asked if we had any lawsuits against anyone. At that time again, we told him about Frank's accident. Attorney Shawn Christopher asked us if the case had been filed in court yet and we said no, that it had not gotten that far. His response was "If it's not filed with the court, then technically you don't have a pending lawsuit". He went on to ask us if had a lawyer and asked who it was. When we told him that it was Glenn Lerner, he told us that we would not get very much from the case and that if we did tell the trustee, we would only be able to keep $16,000 of it anyway. We answered no when we were asked because we were told that we did not technically have a case pending.

9. After Frank and I met with Ed Coleman, we followed his advice to try to make things right by reopening the case and requesting to re-file under Chapter 11. On October 17, 2011, my husband got a message from Lauren at Christopher Legal asking him to call her. Frank was on the road so he asked me to handle it. When I called Lauren back, she had indicated that they had received paperwork from Ed Coleman and she asked me if I was aware of what filing Chapter 11 involved. I said I thought so and she said I had better speak with Shawn. He got on

3

the phone and asked me what was happening. I explained the situation to him and he started to tell me that we did not advise him of the fact that we had retained a lawyer (Glenn Lerner) and that we had done that after we had filed bankruptcy. I corrected him and told him that we did tell him, because I remembered what his response had been. He started to tell me that reopening the case and requesting Chapter 11 would not be wise because it would be expensive. He told me that he knew Brian Shapiro as an acquaintance and asked me if I wanted him to call to see what the end result would be. I said ok, he said to me "No, I am asking you if you want me to call him and see what he says". I figured he was taking notes or that he wasn't allowed to call unless I requested it so I answered yes.

10. Shawn Christopher called me back after a few minutes to inform me that he had talked with Brian Shapiro and that he said that he would not open the case for criminal charges. Shawn seemed worried that he was going to be in trouble for all of this and started to tell me that he does his best to give his clients the best advice possible and said something about the caliber of clients that he handles. Something to the effect of that he only does business with honest clients. I got the feeling that he was still trying to come up with his reason for giving us the advise that he did, I told him that we were not trying to get anyone in trouble but that we just needed to make things right. He said that he would be interested in handling the reopening of the case and I told him that I didn't have a problem with that and that I would call him back. I had my husband call Henness & Haight to see if it was too late and they told him that Ed Coleman had already been retained to handle the case. I emailed Lauren, the paralegal at Christopher Legal, on or about November 18, 2011, to inform her of this.

11. It was my understanding that I needed to follow the advice of my attorney in

4

regard to this matter. Although, at the time, I did advise Attorney Shawn Christopher of the accident, I did not question the logic of what the attorney said, I followed his advice, as he is the attorney, and assumed he knew what he was doing.

12.  I had no idea that the accident would have any affect on our bankruptcy and with the advice from our attorney, did not include it as there was no case at the time.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Bonnie Levesque

Subscribed to and Sworn before me this 8th day of December, 2011.

_____
Notary Public, my commission
Expires on:

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
T.L. TWITCHELL-MASKEW
No: 08-6682-1
My Appointment Expires May 9, 2012

5